**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**DARREN T. VANDEUSEN,**

                   **Petitioner,**

              **v.**                                 **9:16-CV-1171
                                                   (FJS)**

**CHRIS MILLER, Superintendent, Great
Meadow Correctional Facility,**

                   **Respondent.**

_____

**APPEARANCES**                                 **OF COUNSEL**

**LAW OFFICE OF MARK A. MYERS**      **MARK A. MYERS, ESQ.**
P.O. Box 983
Orange Park, Florida 32067
Attorneys for Petitioner

**OFFICE OF THE NEW YORK**             **LISA E. FLEISCHMANN, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner Darren T. VanDeusen filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1, Petition; Dkt. No. 1-1 and 1-2, Copies of State Court Papers, Parts 1 and 2 ("Petitioner's State Court Papers").[1]

Petitioner challenges a 2013 judgment of conviction after a jury trial in Otsego County Court of

---

[1] The cited page numbers for the Petition and Petitioner's copies of the State Court Papers, Parts 1 and 2, refer to those that the Court's electronic filing system ("ECF") generated.

Criminal Sexual Act in the First Degree. *See* Petition at 1. Petitioner's conviction stems from his sexual violation of a 10-year-old child. As a result of this conviction, the court sentenced Petitioner to a prison term of 20 years, followed by 15 years of post-release supervision. *See id.; see also People v. VanDeusen*, 129 A.D.3d 1325 (3d Dep't 2015).

Petitioner raises two grounds for habeas relief: (1) he was denied effective assistance of trial counsel "due to [the] failure of trial counsel to investigate an alibi defense and file an alibi notice" (Ground One), and (2) his counsel was ineffective for failing to "familiarize himself with Y STR DNA evidence" (Ground Two). *See* Petition at 5-7. Respondent opposes the petition. *See* Dkt. No. 8, Answer; Dkt. No. 8-1, Respondent's Memorandum of Law ("Respondent's Memorandum"); Dkt. Nos. 10, 10-1 and 10-2, State Court Records ("Respondent's State Court Records").[2]

For the reasons that follow, the Court denies and dismisses the petition.

## II. RELEVANT BACKGROUND

On April 20, 2012, an Otsego County Ground Jury indicted Petitioner for the crime of Criminal Sexual Abuse in the First Degree (Penal Law § 130.50[3]). *See* Respondent's State Court Records at 295. The indictment was based on Petitioner's actions during the early morning of December 13, 2011.

At that time of the incident, Petitioner was 18 years old and had been dating the victim's older sister for more than two years. *See id.* at 699-701, 728. During the morning hours of December 13, 2011, Petitioner, who was spending the night at the victim's house with his girlfriend, woke the 10-

---

[2] The cited page numbers for the Answer, *see* Dkt. No. 8, and Respondent's Memorandum of Law, *see* Dkt. No. 8-1, refer to those that the Court's electronic filing system generated. The "Respondent's State Court Records" page numbers for the state-court records filed at Docket Numbers 10, 10-1 and 10-2 appear at the bottom center of each page.

year-old in her bedroom and told her to follow him into the bathroom. Once in the bathroom, Petitioner locked the door and told the young girl to pull her pants down. Petitioner then held his hand over her mouth and had her kneel on the floor over the toilet seat. He then proceeded to penetrate the victim anally with his penis. After Petitioner was finished, he told the victim that if she told anyone about the attack, he would go to jail and she would go to "juvenile," which scared the victim. Petitioner then cleaned himself off with a rag and put it in the laundry. The victim cleaned herself with a paper towel and threw it away in the garbage. She then dressed and went to bed. *See* Respondent's State Court Records at 702-707.

The following day, the victim's brother found a condom wrapper in his older sister's bedroom and told his mother. The mother confronted Petitioner and her eldest daughter, who admitted they were having anal sex. *See id.* at 729-730.

Later that day, the mother also spoke to her 10-year-old daughter because she was concerned about how close she and Petitioner had become. When her daughter came home from school, her mother asked if Petitioner ever touched her inappropriately. The victim "froze" and then began crying saying, "no, mommy, no." She then told her mother about the previous evening. *See id.* at 731-735. Her mother immediately took her to the hospital, where a certified sexual assault nurse and a pediatrician examined the victim. *See id.* at 735. Two small bruise marks were observed at the 11:00 and 1:00 positions on the victim's anus, and a 2 millimeter abrasion was also found below her anus. According to the nurse and pediatrician, it appeared that the three wounds were inflicted at the same time and were consistent with the victim's account of sodomy. *See id.* at 752-756.

A police investigator, Jeffrey Moore, was also called to speak with the victim at the hospital. After the victim recounted the events, Investigator Moore obtained buccal swabs from Petitioner, the

victim and the victim's two brothers. *See id.* at 792-798.

A forensic scientist, Allyson Goble, then obtained DNA profiles from the buccal swabs obtained from Petitioner and the victim. The DNA profile from the victim's buccal swab matched the DNA profile developed from the victim's perianal and anal swabs. In addition, Ms. Goble also found male DNA on the anal swabs obtained from the victim. As a result, Ms. Goble performed Y-STR (short tandem repeats) DNA testing, which only tests the "Y" strand, or the male chromosome, of the DNA. Ms. Goble then extracted Petitioner's Y-STR DNA from his buccal swab and compared his profile to the male DNA profile obtained from the victim's anal swabs. She opined that the Y-STR DNA profile from the anal swabs matched the Y-STR DNA profile from Petitioner. According to Ms. Goble, this meant that Petitioner and his biological paternal relatives could not be excluded as a donor to the male DNA found on the anal swabs. Ms. Goble stated that this Y-STR DNA profile occurs at a frequency of about 1 in every 2,857 individuals within the world population. *See id.* at 822-850.

On November 16, 2012, a jury found Petitioner guilty of first-degree criminal sexual assault. *See* Respondent's State Court Records at 929. The state court subsequently sentenced Petitioner on January 7, 2013, to a determinate term of 20 years in prison, followed by 15 years of post-release supervision. *See id.* at 944.

Prior to perfecting his direct appeal, Petitioner, through counsel, filed a motion to vacate his judgment of conviction pursuant to CPL § 440.10. Among other things, Petitioner argued that his trial counsel, E.W. Garo Gozigan, was ineffective for failing to file an alibi notice with the prosecution after Petitioner told him he was with a friend, Jason Wellman, during the night of the alleged assault. *See* Respondent's State Court Records at 1-50. The prosecution opposed the motion, and the County Court ordered a hearing, which was held on January 6, 2016.

At the hearing, Mr. Gozigan testified that Petitioner never informed him that he was not at the victim's house the night of the assault. Instead, Mr. Gozigan only recalled Petitioner mentioning on one or two occasions that he might not have been there. In response to this information, Mr. Gozigan testified that he asked Petitioner where he was the night of the assault and why he had told the police in an earlier statement that he was at the house that evening. According to Mr. Gozigan, Petitioner could not answer these questions and told him he would follow up with him. Mr. Gozigan also stated that, not including court appearances, he had met with Petitioner at least three or four times prior to trial and that Petitioner had never mentioned a specific alibi or identified where he had been on the night of the assault. Mr. Gozigan maintained he never heard the name Jason Wellman until he received a letter from Petitioner's new counsel. *See* Respondent's State Court Records at 954-963, 972-975.

Petitioner and Jason Wellman also testified at the CPL § 440 hearing. Mr. Wellman testified that he was with Petitioner the night of the crime. He also claimed that he called Petitioner's attorney more than once but never received a response. On cross-examination, Mr. Wellman admitted, "I don't know dates," and could not provide any explanation as to why he never went to the police to provide Petitioner an alibi. *See id.* at 980-994.

Petitioner testified that he had told Mr. Gozigan four or five times that he was not at the victim's house the night in question but admitted that he had never told Mr. Gozigan where, in fact, he had been that evening. *See id.* at 1005-1009.

The County Court denied Petitioner's CPL § 440 motion on January 21, 2014. Specifically, the court found Mr. Gozigan's testimony credible and did not credit Mr. Wellman's testimony, finding it "inconsistent and illogical, with an outward bias toward seeing his friend avoid jail time." *See id.* at 48.

The Appellate Division, Third Department, consolidated Petitioner's appeal of the CPL § 440.10 motion with his direct appeal. On June 18, 2015, the Appellate Division unanimously affirmed his conviction. *See People v. VanDeusen*, 129 A.D.3d 1325 (3d Dep't 2015). On September 24, 2015, the New York Court of Appeals denied Petitioner's application for leave to appeal. *See* Respondent's State Court Records at 399-400.

### III. DISCUSSION

**A.     Standard of review of a state court's decisions**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1), (2); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotation omitted); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011) (quotation omitted); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (quotation omitted). This standard is "'highly deferential'" and "'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. [766, 773], 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada*

*v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (*per curiam*) (quoting *Harrington v. Richter*, 562 U.S. [86, 102], 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting [*Richter*, 562 U.S. at 103])).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2149 (2012) (*per curiam*) (quoting [*Renico,* 559 U.S. at 779]). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citation omitted).

Federal habeas courts must presume that a state court's factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Id.* at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1096 (2013).

**B.     Standard of review of Petitioner's ineffective assistance of counsel claims**

To demonstrate constitutionally ineffective assistance of counsel, a petitioner "'must show both

deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. at 121 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009)); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Deficient performance requires a showing that counsel's performance fell below an objective standard of professional reasonableness. *See Strickland*, 466 U.S. at 688; *Harrington v. Richter,* 562 U.S. 86, 104 (2010) (quotation omitted). "*Strickland* does not guarantee perfect representation, '"only a reasonably competent attorney."'" *Richter*, 562 U.S. at 110 (quoting [*Strickland*,] 466 U.S. at 687, 104 S. Ct. 2052) (other citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S., at 101, 76 S. Ct., at 164). Even assuming a petitioner can establish counsel was deficient, he still must demonstrate prejudice. *See id.* at 693-94. This requires more than showing "the errors had some conceivable effect on the outcome" but that the counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 693.

Meeting this burden is "'"never an easy task" . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.'" *Premo*, 131 S. Ct. at 739-40 (quotations and other citations omitted). When reviewing a state court's decision under section 2254, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen §2254(d) applies, the question is not whether

counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard." *Id.* Finally, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Id.* at 111.

**C.    Petitioner's claims**

*1. Ground One: Counsel's failure to assert an alibi defense*

Petitioner first argues that he received ineffective assistance of counsel "due to [the] failure of trial counsel to investigate an alibi defense and file an alibi notice." *See* Petition at 5. Petitioner raised this issue in his CPL § 440 motion in the County Court, which held a hearing on the issue. Petitioner, his trial counsel, and Petitioner's alleged alibi for the evening in question, Jason Wellman, testified during the hearing.

> After the hearing, the County Court issued findings of fact as follows:
>
>> The Court observed the candor and comportment of each witness. This court finds attorney E.W. Garo Gozigan credible. Attorney Gozigan testified that the defendant failed to inform him of where he was on the night of December 12-13, 2011. Further the defendant failed to explain to his attorney why he had told the police that he was at the house in question on December 12-13, 2011. The court also credits attorney Gozigan's testimony that he had not heard the name Jason Wellman until this motion was made and thus had no way of investigating this potential alibi claim of his client. . . .
>>
>> The court does not credit the testimony of Jason Wellman. His testimony was inconsistent and illogical, with an outward bias toward seeing his friend avoid jail time. He even stated in his own words that he was not good with dates, but somehow claims to remember two specific days in December, 2011 when he and the defendant share an unremarkable day together playing video games and basketball. Further, this court does not credit the testimony of Jason Wellman that he contacted attorney Gozigan's office more than once and that he never

received a response.

*See* Dkt. No. 1-1, Petitioner's State Court Papers at 3-4.

Accordingly, having observed each of the witnesses during the hearing, the County Court denied Petitioner's CPL § 440 motion on the ground of ineffective assistance of his trial counsel. *See id.* The Appellate Division affirmed the County Court's Order, finding that the "County Court credited the testimony of defense counsel over conflicting proof, an assessment that is 'entitled to great deference on appeal,' and we find that its decision to do so is supported by the record." *VanDeusen*, 129 A.D.3d at 1327 (quoting *People v. Britton*, 49 A.D.3d 893, 894 [2008], *lv denied* 10 NY3d 956 [2008]) (other citation omitted).

This Court has examined the record and finds that the Appellate Division's decision affirming County Court's findings was not contrary to or an unreasonable application of *Strickland*. As the Supreme Court in *Strickland* stated, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Here, the County Court held a hearing on the issue and had the benefit of an expanded record. The County Court made specific findings of fact and concluded that Petitioner's counsel was not ineffective because Petitioner had never told his attorney the name of any alibi witness but merely suggested at some point "that he might not have been at the victim's house on the night of the events that led to the indictment." *See* Dkt. No. 1-1, Petitioner's State Court Papers at 2.

This Court must afford the County Court's findings of fact deference unless they are rebutted by clear and convincing evidence. *See Rosario v. Ercole*, 601 F.3d 118, 128 (2d Cir. 2010) (stating that federal courts on habeas review "must presume the state court's findings of fact are correct and can only be rebutted by clear and convincing evidence otherwise" (citation omitted)). Petitioner did not rebut

the County Court's findings. Since Petitioner never informed his counsel of the name of his alleged alibi, or even where he claimed to be on the night in question, Petitioner's counsel did not act unreasonably by not filing a notice of alibi defense or further investigating an unknown alibi. Trial counsel "cannot be ineffective for failing to file a notice of alibi or pursue an alibi defense when doing so would be creating, in counsels' professional opinion, a false, fabricated alibi." *DeCicco v. Ercole*, No. 9:07-CV-1030, 2010 WL 7884568, *11 (N.D.N.Y. Dec. 22, 2010), *report and recom. adopted*, 2011 WL 5325654 (N.D.N.Y. Nov. 3, 2011) (citation omitted); *Avery v. Graham*, No. 9:12-CV-01347, 2014 WL 2986910, *7-*8 (N.D.N.Y. July 2, 2014) (rejecting petitioner's claim that his counsel should have called an alibi witness during trial; the alleged alibi's statement directly contradicted statements previously made to the police on the day of the incident and therefore, as of the time of the representation, trial counsel had no reason to believe petitioner had a valid alibi defense); *Millio v. Barkley*, 48 F. Supp. 2d 259, 266-67 (W.D.N.Y. 1999) (stating that "[c]ounsel's conduct was reasonable under *Strickland* because petitioner never informed his attorney of any potential alibi witnesses" (citations omitted)). Accordingly, the Court finds that the Appellate Division's denial of Petitioner's ineffective assistance of counsel claim was neither contrary to or an unreasonable application of *Strickland* and, therefore, denies and dismisses Ground One of the habeas petition.

### *2. Ground Two: Counsel's failure to address the DNA evidence*

In Ground Two of his petition, Petitioner claims his trial counsel was ineffective for failing to "proffer any expert testimony in this case." *See* Petition at 7. Petitioner maintains his trial counsel had never tried a case involving Y-STR DNA evidence and that his "lack of knowledge on Y-STR DNA was apparent in his questioning of the State's expert when he cross examined [her] based upon

Mitochondrial DNA." *See id.* For the reasons that follow, the Court denies and dismisses this claim.

Petitioner raised this issue on direct appeal. The Appellate Division rejected the claim, noting that defense counsel "retained an expert to review the Y-STR DNA test results – which were reached through what the trial testimony indicated was a scientifically accepted and reliable method – and vigorously cross-examined the forensic scientist who conducted the test." *VanDeusen*, 129 A.D.3d at 1327. The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Although the Second Circuit has "underscored the importance of effective representation for defendants in child sexual abuse prosecutions," *Eve v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) (citation omitted), the decision as to "'whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review[,]'" *Fuller v. Graham,* No. 9:09-CV-1025, 2013 WL 936553, *11 (N.D.N.Y. Mar. 8, 2013) (quoting *Savinon v. Mazucca*, No. 1:04–CV–1589, 2005 WL 2548032 at *33 (S.D.N.Y. Oct. 12, 2005) (citation omitted), adopted 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006)); *see also Burkett v. Artus*, No. 9:14-CV-0110, 2016 WL 6659492, *11 (N.D.N.Y. Nov. 10, 2016) (quotation and other citations omitted). As the Supreme Court has noted, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Richter*, 562 U.S. at 111. Instead, often "cross-examination will be sufficient to expose defects in an expert's presentation"; and, in the event "counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Id.*

Here, as Petitioner acknowledged in his habeas petition, his trial counsel did hire an expert to review the Y-STR DNA results prior to trial. Nevertheless, Petitioner maintains his counsel was

-12-

ineffective for not introducing the expert witness at trial. Petitioner offers no proof suggesting that a defense expert would have contradicted the State expert's trial testimony. In fact, during the hearing on Petitioner's CPL § 440 motion, Petitioner never inquired about the name of trial counsel's expert, any information or opinions the expert rendered, or what trial counsel's thought process was for not calling the expert at trial. Petitioner's vague, conclusory assertion provides the Court with no basis to conclude that there was an expert witness who could have offered relevant and probative evidence to contradict the State's Y-STR DNA proof. Under these circumstances, trial counsel's decision not to call his own expert witness cannot be considered objectively unreasonable. *See Savinon v. Mazucca*, No. 1:04-CV-1589, 2005 WL 2548032, *33 (S.D.N.Y. Oct. 12, 2005), *adopted* 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006) (rejecting petitioner's ineffective assistance claims because petitioner "'only presented his vague hope that another expert might have reached a different result than the government expert'" (quotation and other citation omitted)); *Mitchell v. Artus*, No. 07 Civ. 4688, 2008 WL 2262606, *30 (S.D.N.Y. June 2, 2008), *recomm. adopted*, 2008 WL 3884373 (S.D.N.Y. Aug. 21, 2008) (stating that the fact that petitioner's counsel hired an expert, but did not to call the expert to testify at trial, suggested that the expert would not have rebutted the State's testimony, thereby constituting a "reasonable strategic choice" by petitioner's counsel, which the Court would not second-guess on habeas review (citation omitted)).

Furthermore, Petitioner cannot establish prejudice because he has not shown that a defense expert would have contradicted the Y-STR DNA evidence that the State presented. *See Burkett,* 2016 WL 6659492, at *11 (rejecting petitioner's claim that trial counsel was ineffective for failing to hire "behavioral and medical experts" where petitioner provided no basis to believe that there was an expert who would have countered the State's medical examiner's testimony (citations omitted)); *Fuller*, 2013

WL 936553, at *11 (concluding that petitioner failed to show prejudice because he could not demonstrate that an expert's testimony would have changed the result of trial).

Accordingly, because Petitioner cannot demonstrate he received ineffective assistance of counsel during the course of the prosecution, the Appellate Division's decision rejecting this claim was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, the Court denies and dismisses Ground Two of the habeas petition.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the petition, *see* Dkt. No. 1, is **DENIED AND DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2)

requires.³ Petitioner must address any further request for a Certificate of Appealability to the Second Circuit Court of Appeals, *see* Fed. R. App. P. 22(b); and the Court further

**ORDERS** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 8, 2017
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Judge

---

³ *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (citation omitted)).